SHARON L. ANDERSON (SBN 94814)
County Counsel
D. CAMERON BAKER (SBN 154432)
Deputy County Counsel
CHRISTOPHER B. WHITMAN (SBN 223636)
Deputy County Counsel
COUNTY OF CONTRA COSTA
651 Pine Street, Ninth Floor
Martinez, California 94553
Telephone:   (925) 335-1800
Facsimile:    (925) 335-1866
Email: christopher.whitman@cc.cccounty.us

Attorneys for Defendant SHAWN PATE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MELVIN LEONARD,<br><br>            Plaintiff,<br><br>v.<br><br>CONTRA COSTA COUNTY; OFFICER SHAWN PATE AND DEFENDANT OFFICER DOES 1 THROUGH 50,<br><br>            Defendants. | No. 3:15-cv-00401-EDL<br><br>DEFENDANT SHAWN PATE'S MOTIONS IN LIMINE<br><br>Courtroom E, 15th Floor<br>The Hon. Elizabeth D. Laporte<br><br>Date Action Filed:  January 28, 2015<br>Pretrial Conf.:  March 7, 2017<br>Trial Date:  March 27, 2017 |

TABLE OF CONTENTS

I. Motion In Limine No. 1 to Exclude Evidence and Argument Regarding Claims for Relief and Parties that Were Dismissed by the Court. . . . . . . . . . . . . . . . . . . . 1

II. Motion In Limine No. 2 to Exclude Evidence and Argument Regarding Matters Admitted by Plaintiff. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. Motion In Limine No. 3 to Exclude All Testimony By Treating Physicians and Other Experts Not Timely Disclosed as Trial Experts by Plaintiff. . . . . . . . . . . . . 3

IV. Motion In Limine No. 4 to Exclude Evidence and Questioning Related to Any Personnel Issues of the Involved Officers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A. Any Evidence or Questioning Concerning Disciplinary Issues Should Be Excluded as Irrelevant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B. Any Evidence or Questioning Concerning Disciplinary Issues Should Be Excluded as Improper Character Evidence. . . . . . . . . . . . . . . . . . . . . . . 6

    C. Any Evidence or Questioning Concerning Disciplinary Issues Should Be Excluded Under FRE 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V. Motion In Limine No. 5 to Request Determination of Whether Defendant Shawn Pate Is Entitled to Qualified Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A. Alleged Unlawful Search. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    B. Alleged Unlawful Detention. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C. Alleged Excessive Force. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VI. Motion In Limine No. 6 to Exclude Evidence and Questioning Related to Plaintiff's Unpled Theory of "Supervisory" Liability for Defendant Pate. . . . . . . . . . . 17

Pursuant to the Court's Case Management and Pretrial Order of September 18, 2015 (Doc. No. 41), as modified by other orders (Doc. Nos. 50, 67, 69), Defendant SHAWN PATE submits his Motions In Limine.

## I. Motion In Limine No. 1 to Exclude Evidence and Argument Regarding Claims for Relief and Parties that Were Dismissed by the Court.

Defendant Shawn Pate submits this motion in limine to exclude all evidence, testimony, and questioning related to any claims and issues previously asserted by Plaintiff Melvin Leonard that were dismissed or limited by the Court, and any parties dismissed by the Court.

Claims, issues, and parties that have been dismissed by the Court are no longer part of this case. Accordingly, evidence relating to those claims, issues, and parties is no longer relevant and should be excluded on that ground.

On January 28, 2015, Plaintiff filed this civil rights action against Defendants Contra Costa County (the "County"), Shawn Pate, and unnamed Does. Doc. No. 1. The complaint alleged that Plaintiff's Fourth Amendment rights were violated during the execution of a search warrant at his apartment. *Id.* Specifically, Plaintiff asserted claims of unlawful entry, excessive force, unlawful detention, unlawful search, and *Monell* liability. *Id.*

Defendants filed a motion to dismiss the *Monell* claim and, after a hearing, the Court granted the motion and gave Plaintiff leave to amend. Doc. No. 18. On May 10, 2015, Plaintiff filed his First Amended Complaint ("FAC"). Doc. No. 19. Defendants filed a motion to dismiss all of the claims for relief in the FAC except excessive force, i.e., the motion challenged the claims for *Monell* liability, unlawful entry, unlawful search, and unlawful detention. After a hearing, the Court granted the motion and, by order dated July 7, 2015, dismissed the *Monell* claim with prejudice, dismissed the County from the case, dismissed the unlawful entry claim with prejudice, and granted Plaintiff leave to amend the claims for unlawful search and unlawful detention. Doc. No. 28.

Plaintiff filed a Second Amended Complaint ("SAC") on July 13, 2015. Doc. No. 31. Defendant Shawn Pate filed a motion to dismiss the claims in the SAC for unlawful search and unlawful detention and, after a hearing, the Court granted the motion in part and denied the

motion in part.  Doc. No. 36.  The Court dismissed the portion of Plaintiff's unlawful search and unlawful detention claims for the time period prior to Defendant Pate confirming that Plaintiff was not the target of the warrant, and held that the SAC stated a claim for unlawful search and unlawful detention with respect to the alleged time period of the search and detention after it was confirmed that Plaintiff was not the target of the search warrant.  *Id.* at 3:26 to 7:14.  Plaintiff was ordered to file an amended complaint, and he filed his Third Amended Complaint ("TAC") on September 6, 2015.  Doc. No. 37.  Defendant Shawn Pate filed his answer on September 18, 2015.  Doc. No. 40.

Thus, the claims for relief that were dismissed by the Court in this action are: (1) *Monell* liability, (2) unlawful entry, and (3) the portion of the claims for unlawful search and unlawful detention that arose prior to the time it was discovered that Plaintiff was not the target of the search warrant; the County was dismissed from the action on July 7, 2015.

For the foregoing reasons, the Court should exclude all evidence, testimony, and questioning related to the above-referenced claims, issues, and parties that were dismissed by the Court.

**II.    Motion In Limine No. 2 to Exclude Evidence and Argument Regarding Matters Admitted by Plaintiff.**

Defendant Shawn Pate submits this motion in limine to exclude all evidence, testimony, and questioning by Plaintiff related to any of the matters that were admitted by Plaintiff in pleadings and in responses to Requests for Admissions.

Under Rule 36, subpart (b), "[a] matter admitted under this rule is conclusively established . . ." Fed. R. Civ. P. 36(b).  Such an admission has the effect of "remov[ing] one of the issues from the lawsuit and thereby reduc[ing] the proof required at trial." *Id.*, advisory committee's note (1970 amendments).  Like an admission in a pleading, a discovery admission has "a conclusively binding effect." *Id.*  "[A]dmissions made in RFAs are binding and cannot be explained away or contradicted by other evidence."  William W. Schwarzer, et al., *Cal. Practice Guide: Federal Civil Procedure Before Trial* ¶ 11:2102 (2016).

///

In its order dated July 7, 2015, this Court found that "Plaintiff admits that the search was conducted pursuant to a valid warrant for his home." Doc. No. 28, at 3:16-18 (citing Plaintiff's Opp. Br. [Doc. No. 24] at p. 3 ["The warrant authorized a search of Plaintiff's residence . . . and . . . probable cause existed to believe that contraband and evidence would be found on the premises."]).

On February 5, 2016, Defendant Pate served Plaintiff with its Requests for Admissions ("RFA"), Set One. Declaration of Christopher B. Whitman ("Whitman Decl."), submitted concurrently herewith, ¶ 3, Ex. A. On February 26, 2016, Plaintiff served his responses to the RFAs, and therein Plaintiff admitted the truth of RFA Nos. 1 and 2. Whitman Decl., ¶ 4, Ex. B. The matters stated in RFA numbers 1 and 2 are as follows:

**REQUEST FOR ADMISSION NO. 1:**
Admit that the search warrant (Doc. No. 21-1, filed May 26, 2015) stated the same street address, unit number, location, floor level, and exterior color scheme as YOUR apartment on July 25, 2013.

**REQUEST FOR ADMISSION NO. 2:**
Admit that YOUR apartment was searched for narcotics and contraband by Defendant and other peace officers on July 25, 2013.

(Whitman Decl., Ex. B.)

For the foregoing reasons, the Court should exclude all evidence, testimony, and questioning by Plaintiff related to the above-quoted, admitted matters.

**III.   Motion In Limine No. 3 to Exclude All Testimony By Treating Physicians and Other Experts Not Timely Disclosed as Trial Experts by Plaintiff.**

Defendant Shawn Pate submits this motion in limine to exclude all trial testimony by any of Plaintiff's treating physicians or other experts who were not timely disclosed as trial experts by Plaintiff.

In its Case Management and Pretrial Order for Jury Trial dated September 18, 2015, this Court ordered as follows: "Initial expert disclosures shall be made no later than April 29, 2016. Rebuttal expert disclosures shall be made no later than May 6, 2016. **All treating physicians who will provide opinion testimony beyond that which can be provided by a lay person must be disclosed as expert witnesses**, but they need not prepare expert reports

1. unless ordered to do so by the Court." Doc. No. 41, 1:26-2:2 (emphasis added). At the request
2. of the parties, the Court later changed the deadline for the disclosure of trial experts to August
3. 19, 2016, and moved the expert discovery cutoff date to October 14, 2016. Doc. No. 50 (filed
4. May 6, 2016). Also at the request of the parties, the Court continued the dates for the pretrial
5. conference and trial, but those orders did not change the deadlines for disclosing trial experts
6. and finishing expert discovery. *See, e.g.*, Doc. Nos. 67 and 69 (filed October 21, 2016 and
7. December 27, 2016).
8.       A party must provide its expert witness disclosures for trial "at the times and in the
9. sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). "Rule 37(c)(1) gives teeth to
10. these requirements by automatically excluding any evidence not properly disclosed under Rule
11. 26(a), irrespective of the party's bad faith or willfulness." *Pineda v. City & Cnty. of San*
12. *Francisco*, 280 F.R.D. 517, 519(N.D. Cal. 2012) (citing *Yeti by Molly Ltd v. Deckers Outdoor*
13. *Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)).
14.       Plaintiff Melvin Leonard never served Defendant Shawn Pate with a disclosure
15. document identifying any experts for trial or any treating physicians who would provide expert
16. opinion testimony at trial. Whitman Decl., ¶ 5. Nor did Plaintiff provide Defendant with a
17. statement of the expert opinions to be provided at trial, the facts or data considered by the
18. experts, or any of the information required by Rule 26. *Id.* Accordingly, Defendant Shawn
19. Pate did not conduct any discovery with respect to trial experts prior to the expert discovery
20. cutoff date of October 14, 2016. *Id.* Thus, to the extent that Plaintiff attempts to identify any
21. experts for trial, including treating physicians to provide expert opinion testimony, Defendant
22. Shawn Pate requests that all testimony by such individuals be barred because of Plaintiff's
23. failure to timely disclose his trial experts. Excluding such testimony is the appropriate remedy
24. for Plaintiff's failure to properly identify these witnesses as trial experts.
25. ///
26. ///
27. ///
28. ///

**IV.   Motion In Limine No. 4 to Exclude Evidence and Questioning Related to Any Personnel Issues of the Involved Officers.**

Defendant Shawn Pate submits this motion in limine to exclude all evidence, testimony, and questioning by Plaintiff related to any personnel issues of Defendant Pate or any of the other peace officers involved in the execution of the search warrant for Plaintiff's apartment.

This motion in limine is made pursuant to the Court's inherent power to manage the course of trials and per Federal Rule of Evidence 103(c). *Luce v. United States*, 469 U.S. 38, 41 (1984); *U.S. v. Cook*, 608 F.2d 1175, 1186 (9th Cir. 1979) (matter should be left to trial court's discretion "with a reminder that advance planning helps both parties and the court"). Under the Federal Rule of Evidence 103(c), "[i]n jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury." Further, "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court." Fed. R. Evid. 104(a).

Here, Plaintiff has neither alleged nor identified any evidence that Senior Inspector Pate or any of the involved peace officers have been subject to any personnel actions involving allegations of unlawful search, unlawful detention, excessive force, or providing untruthful statements. Nor did Plaintiff take the deposition of Senior Inspector Pate or any of the involved officers. However, if Plaintiff were to proffer evidence on these issues, or were permitted to question witnesses on these issues at trial, such evidence and questions would be irrelevant to the jury's determination as to the lawfulness of the search of Plaintiff's apartment, the lawfulness of the detention of Plaintiff, and the lawfulness of the force used on Plaintiff, would be improper character evidence, and any probative value would be substantially outweighed by the danger of unfair prejudice, confusion to the jury, and undue waste of time.

**A.   Any Evidence or Questioning Concerning Disciplinary Issues Should Be Excluded as Irrelevant.**

Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *U.S. v. Boulware*, 384 F.3d 794, 805 (9th Cir. 2004). Under the Federal Rules of Evidence, proposed evidence must have both logical relevance and legal relevance. Logical relevance means the evidence must have some logical tendency to prove or disprove a fact, i.e., to create a reasonable inference as to the probability or lack of probability of that fact. *Hill v. Rolleri*, 615 F.2d 886, 891 (9th Cir. 1980). Legal relevance means that the evidence must tend to establish some fact that is of consequence or material to a decision in the case. Fed. R. Evid. 401. If inferences to be drawn from the evidence are the result of speculation or conjecture, the underlying evidence is not relevant. *Engstrand v. Pioneer Hi-Bred Int'l, Inc.*, 946 F.Supp.1390, 1396 (S.D. Iowa 1996).

In this case, Plaintiff may seek to offer evidence at trial regarding disciplinary actions against Senior Inspector Pate or the other involved officers. Such evidence would have no tendency to prove or disprove any material fact in this case as to the lawfulness of the search, detention, or use of force during the execution of the search warrant. This evidence should be excluded at trial as irrelevant.

**B.  Any Evidence or Questioning Concerning Disciplinary Issues Should Be Excluded as Improper Character Evidence.**

Character evidence is not admissible when offered to prove a person acted "in conformity therewith on a particular occasion." Fed. R. Evid. 404(a); *U.S. v. Lynch*, 437 F.3d 902, 913-14 (9th Cir. 2006). Furthermore, evidence of other crimes, wrongs or acts are inadmissible to prove a person's character in order to show action in conformity therewith. While it may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, it would not be so admissible here. Fed. R. Evid. 404(b). While character evidence may have probative value, there is a high risk the jury could misuse such information as such evidence "subtly permits the trier of fact to reward the good man and punish the bad man because of their . . . characters despite what the evidence . . . shows actually happened." *U.S. v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007).

1  Here, evidence of the character of any of the involved peace officers is irrelevant as it is
2  not an essential element of Plaintiff's claims. *U.S. v. Keiser*, 57 F.3d 847, 856 (9th Cir. 1995).
3  The subjective intentions of an officer plays no role in ordinary, probable cause Fourth
4  Amendment analysis. *Whren v. United States*, 517 U.S. 806, 813 (1996). An illegitimate
5  subjective motivation of a police officer will not invalidate an "objectively justifiable" seizure.
6  *Id.* at 812; see also *United States v. Cervantes*, 219 F.3d 882, 890 (9th Cir. 2000), abrogated on
7  other grounds by *Brigham City v. Stuart*, 547 U.S. 398 (2006). At issue is "[t]he
8  reasonableness of a particular use of force must be judged from the perspective of a reasonable
9  officer on the scene, rather than with the 20/20 vision of hindsight..." *Graham v. Connor*, 490
10 U.S. 386, 396-397 (1989). Therefore, character is irrelevant to Plaintiff's claims regarding
11 the execution of the search warrant at his apartment.

12 Furthermore, Plaintiff cannot admit evidence of other wrongs or acts under the guise of
13 the exceptions stated in Rule 404(b). Evidence of investigations or discipline regarding Senior
14 Inspector Pate does not bear on issues of proof of motive, opportunity, intent, preparation,
15 plan, knowledge, identity, or absence of mistake or accident in relation to Plaintiff's claims.
16 Moreover, such evidence does not bear on Senior Inspector Pate's motive, intent, plan or other
17 issues as it pertains to his interactions with Plaintiff. Because evidence of alleged other
18 wrongs by any of the involved officers can only be offered by Plaintiff for the improper
19 purpose of trying to cast the officers as bad people, it would be inadmissible character
20 evidence.

21 **C.   Any Evidence or Questioning Concerning Disciplinary Issues Should
22       Be Excluded Under FRE 403.**

23 Although evidence may be relevant, it may be excluded if "its probative value is
24 substantially outweighed by the danger of unfair prejudice, confusion of the issues, or
25 misleading the jury, or by considerations of undue delay, waste of time, or needless
26 presentation of cumulative evidence." Fed. R. Evid. 403. This rule requires on-the-spot Court
27 balancing of the probative value versus the danger of unfair prejudice and the other areas listed
28 ///

in Federal Rules of Evidence 403, potentially to exclude evidence that has already been found to be factually relevant. *Obrey v. Johnson*, 400 F.3d 691, 698 (9th Cir. 2005).

Here, there is high danger of unfair prejudice to Senior Inspector Pate and the other officers if the Court would admit evidence of personnel issues. Unfair prejudice means an undue tendency to suggest decision on an improper basis, commonly an emotional one. *Old Chief v. U.S.*, 519 U.S. 172, 180 (1997). If such evidence tends to suggest a decision on an improper basis, it is unfairly prejudicial. *U.S. v. Winkle*, 477 F.3d 407, 417 (6th Cir. 2007).

It is possible that Plaintiff may seek to admit evidence of disciplinary issues of the involved peace officers to suggest to the jury that the officers are bad people and/or not to be believed. Such evidence would be proffered solely to try to cast the officers in a bad light and would have no probative value. Also, any evidence of disciplinary issues would potentially inflame the jury against the officers based upon irrelevant encounters and actions having nothing to do with the execution of the search warrant at Plaintiff's apartment on July 25, 2013. In other words, if such evidence is not excluded via this Rule (or the other Rules as argued above), the jury may arrive at a verdict against Senior Inspector Pate based solely on past personnel related issues that have no bearing on the issues pertaining to Plaintiff.

The admission of such evidence may also tend to confuse or mislead the jury as to the issues to be decided and cause an undue waste of time. The issues in this case relate to the execution of the search warrant at Plaintiff's apartment on July 25, 2013. The issues do not relate to the potential personnel issues of any of the involved officers. Admission of such evidence may confuse or mislead the jury into believing that the key issues in this case relate to personnel history, as opposed to the limited issues of whether the search, detention, and use of force were lawful. Finally, if Plaintiff were allowed to delve into personnel issues, Defendant Pate would be forced to put on mini trials of the personnel issues of each officer to establish the truth of the matters and that no wrong was done. All this additional work and testimony would be required to allow Defendant Pate to defend himself on issues that are unrelated to Plaintiff's claims.

///

## V. Motion In Limine No. 5 to Request Determination of Whether Defendant Shawn Pate Is Entitled to Qualified Immunity.

Defendant Shawn Pate submits this motion in limine to request that the Court determine whether he is protected by qualified immunity with respect to each of Plaintiff's claims for unlawful search, unlawful detention, and excessive force. A district court may adjudicate the issue of qualified immunity at the pretrial conference. *Valdez v. Farmon*, 766 F. Supp. 1529, 1532-33 (E.D. Cal. 1991); *LaLonde v. County of Riverside*, 204 F.3d 947, 953 (9th Cir. 2001) (determining at the pretrial hearing that qualified immunity applied to bar Fourth Amendment claim); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 971 (9th Cir. 2010) ("District courts unquestionably possess the power to enter summary judgment sua sponte, even on the eve of trial," provided that notice and an opportunity to be heard occurs).

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Therefore, regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). "[A] district court should decide the issue of qualified immunity as a matter of law when the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts." *Conner v. Heiman*, 672 F.3d 1126, 1131 (9th Cir. 2012).

In *Saucier v. Katz*, 533 U.S. 194 (2001), overruled in part by *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court laid out the framework for determining an officer's

///

///

///

entitlement to qualified immunity.[1] The threshold inquiry requires a court to ask, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. The inquiry ends at this stage if no constitutional right is found to have been violated; the plaintiff cannot prevail. *Id.* If, on the other hand, the plaintiff's evidence makes out a constitutional injury, then the court must determine whether that constitutional right was clearly established at the time of the violation. *Id.*; *Browning v. Vernon*, 44 F.3d 818, 823 (9th Cir. 1995) (holding that for a right to be clearly established, "the contours of the right must be sufficiently clear so that a reasonable official would know that his conduct violates that right"). If the right was not clearly established, the qualified immunity doctrine shields the officer from further litigation. *Saucier*, 533 U.S. at 201. Finally, even if the violated right was clearly established, *Saucier* recognized that it may be difficult for a police officer fully to appreciate how the legal constraints apply to the specific situation he or she faces. Under such a circumstance, "if the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense." *Id.* at 205; *Romero*, 931 F.2d at 627 (applying qualified immunity if the officer could have reasonably believed that his conduct was lawful).

### A.     Alleged Unlawful Search

Plaintiff's claim for unlawful search is limited to the period of the search that allegedly occurred after Defendant Pate confirmed that Plaintiff was not the target of the search warrant. Doc. No. 37 (TAC), Doc. No. 36 (Order of Sept. 3, 2015). However, qualified immunity applies to Defendant Pate because the evidence, when viewed in the light most favorable to Plaintiff, shows that Plaintiff consented to the search, that Senior Inspector Pate did not personally conduct any search, and that the search did not continue for an unreasonable period of time after the officers confirmed that Plaintiff was not the target of the search warrant. *Saucier*, 533 U.S. at 201.

---

[1] In *Pearson v. Callahan*, 555 U.S. 223, 231-35 (2009), the Court held that while the sequence set forth in *Saucier* is often appropriate, it should no longer be regarded as mandatory.

1  In deposition, Plaintiff admitted that he consented to the search of his apartment, stating
2  to Senior Inspector Pate:
3      "Well, I don't know what to say.  If, you know, you want me to tell you that I, you
4      know, don't have drugs, don't sell drugs, I don't know what to tell you.  Which – **you**
5      **know, be free to look**.  Good luck.  That's all I can tell you."
6  P's Depo. 154:7-155:2 (emphasis added) (attached as Ex. C to Whitman Decl.).
7      "Whatever you do, **you can just keep on searching**.  Whatever it is, there ain't no
8      drugs.  You ain't going to find no drugs."  ". . . **You can look all over, you can search**
9      – all your people, they looking all over, they searching and stuff . . ."  "Well, man, if
10     you feel like I got it, **have at it**.  You know, **go ahead on and find the drugs.**"
11 P's Depo. 200:5-202:10 (emphasis added) (attached as Ex. C to Whitman Decl.).
12     Q.    **So you invited him** [Senior Inspector Pate] **to continue searching the**
13            **apartment?**
14     A.    **Yeah.**
15 P's Depo. 201:21-23 (emphasis added) (attached as Ex. C to Whitman Decl.).
16     In deposition, Plaintiff also testified that he did not see Senior Inspector Pate personally
17 conducting any search of his apartment:
18     Q.    So did you see Lieutenant Pate personally do any searching of your apartment?
19     A.    No, I didn't see him do [it] personally.
20 P's Depo. 238:24-239:1 (attached as Ex. C to Whitman Decl.).
21     Furthermore, Plaintiff does not have any evidence that the search of his apartment
22 continued for an unreasonable period of time after the officers confirmed that he was not the
23 target of the search warrant.  In deposition, Plaintiff testified that when the officers learned
24 about his identity, they removed his handcuffs and left his apartment so they could interview
25 the occupant of the apartment directly above Plaintiff's and search that other apartment, i.e.,
26 that the search ended when Plaintiff's identify was confirmed.
27 ///
28 ///

1  Q.   Okay. But you're saying, and you say this in your complaint, that once the
2       officers figured out that you were not the suspect of the warrant, they took the
3       cuffs off you, correct?
4  A.   Right [yes].

P's Depo. 240:8-12 (attached as Ex. C to Whitman Decl.).

6  Q.   Okay. So the cuffs are off, and then how much time goes by before the officers
7       leave you in your apartment to go upstairs?
8  A.   I would say probably two to three minutes. Somewhere in that neck of the
9       woods.

P's Depo. 256:10-14 (attached as Ex. C to Whitman Decl.). Plaintiff also confirmed that none of the officers stayed with him in his apartment when they went upstairs, i.e., that he was left totally alone in his apartment. *Id.* 252:4-254:4 (attached as Ex. C to Whitman Decl.). When the officers did return to Plaintiff's apartment, it was only for the purpose of apologizing and taking steps to make sure that his front door was repaired. *Id.* at 254:5-25, 257:13-258:2, 260:6-24. Therefore, because Plaintiff's own testimony shows that the search ended once the officers confirmed that Plaintiff was not the target of the search warrant, as a matter of law Plaintiff cannot establish a claim for unreasonable search. *Saucier*, 533 U.S. at 201.

For the same reasons and facts as stated above, qualified immunity applies to Defendant Pate because a reasonable officer could believe that his conduct with respect to the search was lawful. *See, e.g.*, *Barlow v. Ground*, 943 F.2d 1132, 1139 (9th Cir. 1991) ("A police officer generally has qualified immunity for conducting an unconstitutional search if he is acting on the basis of a facially valid warrant."); *Tucker v. City of Richmond*, No. C 12-1829 MEJ, 2012 U.S. Dist. LEXIS 91599, at *9-11 (N.D. Cal. July 2, 2012) (applying qualified immunity to claim for unlawful search because it was reasonable for officers to rely on information in search warrant obtained from a reliable source that was ratified by a magistrate judge); *see also Malley*, 475 U.S. at 344-45 ("Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." [citation omitted]).

Here, the officers had probable cause to believe that the suspect was engaged in criminal conduct on the premises identified in the search warrant, namely, the illegal sale of narcotics, possession of firearms, etc.[2] Doc. Nos. 21-1, 21-2 (describing information obtained from the confidential reliable informant). Therefore, it was not "plainly incompetent" for the officers to rely on the information described in the facially valid warrant, as it was based on information supplied by a reliable informant, and the warrant was ratified by Judge Laettner. *Malley*, 475 U.S. at 341. Moreover, to the extent it was a "mistake" to conduct the initial search or to allow the search to continue for two to three minutes after confirming Plaintiff's identity, Senior Inspector Pate could have reasonably believed that such conduct was lawful. *Saucier*, 533 U.S. at 205; *Romero*, 931 F.2d at 627. Thus, qualified immunity protects Senior Inspector Pate from liability for the alleged unlawful search.

### B. Alleged Unlawful Detention

Plaintiff's claim for unlawful detention is limited to the period of the detention that allegedly occurred after Defendant Pate confirmed that Plaintiff was not the target of the search warrant. Doc. No. 37 (TAC), Doc. No. 36 (Order of Sept. 3, 2015). However, qualified immunity applies to Defendant Pate because the evidence, when viewed in the light most favorable to Plaintiff, does not show an unreasonable detention under the Fourth Amendment. *Saucier*, 533 U.S. at 201.

As shown above, Plaintiff does not have any evidence that his detention continued for an unreasonable period of time after the officers confirmed that he was not the target of the search warrant. In deposition, Plaintiff testified that when the officers learned about his identity, they removed his handcuffs and left his apartment so they could interview the occupant of the apartment directly above Plaintiff's and search that other apartment, i.e., that Plaintiff's detention ended when his identity was confirmed. P's Depo. 240:8-12 (handcuffs removed) 256:10-14 (officers leave), 252:4-254:4 (left alone) (attached as Ex. C to Whitman

---

[2] In its Order of July 7, 2015, at p. 2 n. 2 (Doc. No. 28), the Court took judicial notice of the Affidavit for Search Warrant signed by Shawn Pate (Doc. No. 21-1), and the Search Warrant signed by Judge John T. Laettner (Doc. No. 21-2).

Decl.). Therefore, because Plaintiff's own testimony shows that the detention ended once the officers confirmed that Plaintiff was not the target of the search warrant, as a matter of law Plaintiff cannot establish a claim for unreasonable detention. *Saucier*, 533 U.S. at 201.

For the same reasons and facts as stated above, qualified immunity applies to Defendant Pate because a reasonable officer could believe that his conduct with respect to the detention was lawful. *See, e.g.*, *Nesby v. City of Oakland*, No. C 05-3555 JL, 2007 U.S. Dist. LEXIS 22574, at *56-57 (N.D. Cal. Mar. 19, 2007) (applying qualified immunity because it was reasonable for officer with a facially valid warrant to detain the suspect until he could "make sure" that her claims of innocence were valid); *Williams v. County of Santa Barbara*, 272 F. Supp.2d 995, 1014-16 (C.D. Cal. 2003) (applying qualified immunity to claim for unlawful detention "[b]ecause there was nothing obviously defective about the [search] warrant").

Here, the officers had probable cause to believe that the occupant of the apartment was a dangerous drug dealer with firearms and other weapons on the premises. Doc. Nos. 21-1, 21-2 (search warrant documents). A reasonable officer would, under such circumstances, believe that detaining Plaintiff in handcuffs during the search was "routine." *Summers*, 452 U.S. at 704-05 & n.21; *Muehler*, 544 U.S. at 100 (referring to a similar search for contraband as "inherently dangerous"). This conclusion would follow even if the officers learned that the occupant was not the suspect and did not appear dangerous. *Tekle v. United States*, No. CV 01-3894-RSWL, 2009 U.S. Dist. LEXIS 39091, at *27 (C.D. Cal. May 8, 2009); *Harris v. County of L.A.*, No. CV 08-5936-GW (PLA), 2010 U.S. Dist. LEXIS 117675, at *18 (C.D. Cal. March 1, 2010). Therefore, it was not "plainly incompetent" for Defendant Pate to detain Plaintiff during the search, or to leave the handcuffs on Plaintiff because of the "inherently dangerous" nature of the activity and the law enforcement interests to be served by restraining Plaintiff. *Malley*, 475 U.S. at 341; *Muehler*, 544 U.S. at 100. Moreover, to the extent it was a "mistake" to allow the detention to continue for two to three minutes after confirming Plaintiff's identity, Senior Inspector Pate could have reasonably believed that such conduct was lawful. *Saucier*, 533 U.S. at 205; *Romero*, 931 F.2d at 627. Thus, qualified immunity protects Defendant Pate from liability for the alleged unlawful detention.

### C. Alleged Excessive Force

Plaintiff's claim for excessive force concerns two separate instances of conduct by different sets of peace officers. First, Plaintiff claims that when he was in his bedroom, two officers "snatched" (i.e., pulled or dragged) him from his bed, threw him to the floor, roughly handcuffed his wrists, and lifted him up from the floor using his wrists. Second, Plaintiff claims that when he was being interviewed in his living room by Senior Inspector Pate, he complained that the handcuffs were too tight but Pate refused to loosen or remove them. Doc. No. 37 (TAC) ¶¶ 7, 12, 13, 17. However, qualified immunity applies to Defendant Pate because the evidence, when viewed in the light most favorable to Plaintiff, does not show an unreasonable use of force by Pate under the Fourth Amendment. *Saucier*, 533 U.S. at 201.

In deposition, Plaintiff admitted that he did not see Senior Inspector Pate in his bedroom and did not have any information that Pate "snatched" from his bed, threw him to the floor, etc. P's Depo. 192:5-9, 198:18-199:6. Plaintiff also admitted that Senior Inspector Pate was not the officer who placed handcuffs on Plaintiff, as that was done by one of the two officers in his bedroom. *Id.* 191:12-18. Furthermore, Plaintiff asserted that he was "sure" he would be able to identify the two officers in his bedroom (*Id.* 196:21-197:3), yet when he was introduced to Senior Inspector Pate at his deposition (*Id.* 131:4-15 [Pate sat in on Plaintiff's deposition as a representative from the Office of the District Attorney]), Plaintiff did not identify Pate as one of the two officers in his bedroom.

Here, Plaintiff's own testimony shows that Senior Inspector Pate was not present in his bedroom with the other officers, thus such testimony precludes a finding that Pate can be liable for the alleged use of excessive force by those other individuals in the bedroom. *Holcomb v. Ramar*, No. 1:13-CV-1102 AWI SKO, 2015 U.S. Dist. LEXIS 143260, at *38-39 (E.D. Cal. Oct. 20, 2015) (holding that merely being present after another officer uses force against a suspect is not a basis for holding the second officer liable, as there must be evidence linking the second officer to the use of force).

In addition, Plaintiff does not have any objective evidence showing (1) that the handcuffs were unreasonably tight, e.g., causing cuts or abrasions on his wrists, discoloration

of the skin, swelling, loss of feeling in the fingers, etc.,[3] and (2) that Senior Inspector Pate had actual knowledge that the handcuffs were unreasonably tight. Given these circumstances, it was not unreasonable for Senior Inspector Pate to presume that the other officers had properly placed the handcuffs on Plaintiff's wrists. That is, even if the handcuffs were incorrectly placed on Plaintiff's wrists (i.e., unnecessarily tight), it was reasonable as a matter of law for Senior Inspector Pate to assume that the other officers' handcuffing of Plaintiff was lawful and proper. *See Torres v. City of L.A.*, 548 F.3d 1197, 1212 (9th Cir. 2008) (holding that an officer cannot be liable for acting on incorrect information from another officer if he has an objectively reasonable, good faith belief that the information is correct); *United States v. Robinson*, 536 F.2d 1298, 1299 (9th Cir. 1976) (holding that an officer cannot be liable for acting on facially valid information from another officer); *Holcomb*, 2015 U.S. Dist. LEXIS 143260, at *39 (applying qualified immunity because it would not have been clear to the officer, who had not observed or participated in any use of force, that the other officers had acted unlawfully).

Therefore, it was not "plainly incompetent" for Senior Inspector Pate to rely on his fellow officers to properly handcuff Plaintiff. *Malley*, 475 U.S. at 341. Moreover, to the extent it was a "mistake" to rely on his fellow officers and disbelieve Plaintiff's subjective complaints, Senior Inspector Pate could have reasonably believed that his conduct was lawful. *Saucier*, 533 U.S. at 205; *Romero*, 931 F.2d at 627. Thus, qualified immunity protects Senior Inspector Pate from liability for the alleged excessive force.

///

///

---

[3] *See Mattos v. Agarano*, 590 F.3d 1082, 1086-87 (9th Cir. 2010) (requiring "specific facts" of the injuries allegedly suffered, and finding that plaintiff's conclusory statements of an "[i]ncredibly painful" taser that caused "injuries" failed to establish an unreasonable use of force under the Fourth Amendment); *Peters v. Richwine*, 462 Fed. Appx. 689, 691 (9th Cir. 2011) (finding statements that the use of handcuffs "cause[d] pain" and "injury" to be insufficient to establish excessive force); *Muehler*, 544 U.S. at 109 (Stevens, J., concurring) (holding that the use of handcuffs was reasonable, despite the plaintiff's allegation that the handcuffs "were 'real uncomfortable' and that she had asked the officers to remove them, but that they had refused").

### VI. Motion In Limine No. 6 to Exclude Evidence and Questioning Related to Plaintiff's Unpled Theory of "Supervisory" Liability for Defendant Pate.

Defendant Shawn Pate submits this motion in limine to exclude all evidence, testimony, and questioning by Plaintiff related to any theory of liability purporting to make Defendant Pate liable for the actions of officers that he supervised.

The only defendant in this action is Senior Inspector Shawn Pate, as the County was dismissed on July 7, 2015 (Doc. No. 28), and no Doe Defendants were ever named by Plaintiff. After filing his initial complaint, Plaintiff filed three amended complaints. *See, e.g.,* Doc. Nos. 1, 19 , 31, 37. However, none of the complaints allege that Defendant Shaw Pate was a "supervisor" or exercised supervisory authority over any of the other peace officers involved in the execution of the search warrant at Plaintiff's apartment. Instead, the Third Amended Complaint (like the others) only alleges that "Officer Shawn Pate was at all times relevant to this complaint employed as a law enforcement officer," and Defendant Pate is being sued "in his individual capacity." Doc. No. 37, at 2:9-12. But a plaintiff should not be allowed to pursue a claim at trial that was not pleaded in its complaint. *See Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 995 (9th Cir. 2009). Moreover, Plaintiff did not propound any discovery to Defendant Pate (or take any depositions) that raised the issue of "supervisory" liability.

Thus, Plaintiff never raised any "supervisory" theory of liability, and Plaintiff did nothing to place Defendant Pate on notice that this theory could be at issue at trial. Accordingly, because it would be fundamentally unfair for Defendant Pate to try and defend against an unpled trial theory for which no discovery was conducted, Plaintiff should be barred from introducing any evidence on this unpled theory of liability at trial. *See Dream Games*, 561 F.3d at 995.

///

///

///

///

1
2  DATE: February 15, 2017          SHARON L. ANDERSON, County Counsel
3
4                                   By:  _____/s/_____
                                         CHRISTOPHER B. WHITMAN
5                                        Deputy County Counsel
                                         Attorneys for Defendant SHAWN PATE
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28